JUDGE SULLIVAN

# 13 CIV 4112

Thomas M. Lancia PLLC
By: Thomas M. Lancia, Esq.
22 Cortlandt Street
16th Floor
New York, New York 10007
212.964.3157

RECEIVED
JUN 14 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
INSTITUTIONAL INVESTOR, LLC               :

                              Plaintiff,   :          <u>COMPLAINT</u>

              - v -                        :          Jury Trial Demanded

GEORGE E. SANSOUCY, P.E. LLC              :          13 CIV.
and GEORGE E. SANSOUCY

                                           :

                              Defendants.
-----------------------------------------------------------X

Plaintiff INSTITUTIONAL INVESTOR, LLC ("II"), by its attorneys, Thomas M.

Lancia PLLC, brings this civil action against Defendants GEORGE E. SANSOUCY, P.E.

LLC (" Sansoucy LLC") and GEORGE E. SANSOUCY ("Sansoucy") (collectively

"Defendants"), complains as follows:

## PARTIES AND JURISDICTION

1.      By this Complaint, II seeks statutory damages, actual damages,

compensatory damages, treble damages, punitive and exemplary damages, injunctive

relief, and its attorneys' fees and costs pursuant to the Copyright Act, 17 U.S.C. § 501

*et seq.*; the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; Title II of the Electronic

Communications Privacy Act, 18 U.S.C. § 2701 *et seq.* and for breach of contract,

trespass, and misappropriation of confidential business information and/or trade

secrets.

2.      II is a Delaware company with its principal place of business at 225 Park Avenue South, New York, New York 10003.  Sansoucy LLC is a New Hampshire Limited Liability Company with its principal place of business at 32 Nimble Hill Road, Newington, New Hampshire 03801.  Sansoucy LLC also has an office at 279 N. Main Street, Lancaster, New Hampshire 03584.  Sansoucy is the Chief Executive Officer and/or President of Sansoucy LLC.

3.      Pursuant to 28 U.S.C. §§ 1331 and 1338(a), the Court has subject matter jurisdiction over II's claims for copyright infringement, brought under the Copyright Act, 28 U.S.C. § 501 *et seq.*; and for violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and Title II of the Electronic Communications Privacy Act, 18 U.S.C. § 2701 *et seq.*  Pursuant to 28 U.S.C. § 1332(a)(1), the Court has jurisdiction based on the diversity of citizenship of the parties.  The Court has supplemental jurisdiction over II's remaining claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

4.      In its license agreements with II, Sansoucy LLC consented to the exercise of personal jurisdiction by this Court.  Additionally, upon information and belief, this Court has personal jurisdiction over Defendants because it (a) purposefully directs activities towards the state of New York, including the distribution and sale of securities and other investments; (b) regularly conducts and solicits business in the state of New York and maintains an office in New York City and New York State; (c) derives substantial revenues from goods and/or services provided to customers in the state of New York; and/or (d) regularly and purposefully accessed II's servers located in New York.

5.      Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. § 1400(a).

## FACTUAL BACKGROUND

6.     II is the United States subsidiary of one of Europe's largest business and financial magazine publishers, II Euromoney PLC.  II owns copyrights in both of its print and online editions of publications, journals, ebooks and the like.   Among those online publications is a series of sophisticated, timely, unique and highly coveted niche market e-magazines provided under the rubric "II Intelligence."  Though anyone can purchase them, these e-magazines are not usually marketed to the general public but rather are frequently purchased by fund managers, compliance officers and other business executives.  Within II Intelligence, there are several niche market online publications, such as Foundations and Endowments,  Power Intelligence, Derivatives Intelligence, Real Estate Intelligence, Fund Industry Intelligence and so on.  In each of these areas, II delivers clearly organized and customized content, including news, data and features, quickly but carefully developed at substantial cost to II, addressing the subscribers' need for timely and pertinent information to stay abreast of the market.   Subscribers, including some of the most prominent governmental and financial institutions in the United States, recognize the considerable benefit reaped from these online publications and are generally content to pay a commensurate fee for it.

7.     Within II Intelligence lies  Power Intelligence, an exclusive information service providing practical, actionable information for investment,  project finance and their advisers.   Power Intelligence is provided through a password-protected internet website available only to subscribers ("Website").  Subscribers pay for single or multiple user licenses for a fee to access the content contained on the website.

3

8.      The first time the Website is accessed by a new subscriber, he or she must indicate agreement with the terms and conditions of the Website before he or she is permitted to view the exclusive and unique content.   Among those terms and conditions are provisions pertaining to use.  Section 3.2 of the Terms and Conditions expressly states that "[y]ou agree to use the Sites and the Content solely for your own personal use and benefit and not for resale or other transfer or disposition to any other person or entity."  Section 6.4 of the Terms and Conditions also states that:

> "Except to the extent a user name and password is intended for more than one licensed user as agreed by us in writing, the following are not permitted:
>
>> a) any Registered User, Subscriber or licensed user under any subscription sharing their user name and password;
>>
>> (b) access through a single name and password being made available to multiple users on a network . . . "

Finally, Section 3.5 cautions: "If it is brought to our attention that you have sold, published, distributed, retransmitted or otherwise provided access to any article(s) from the Content to anyone without our express prior written permission, we will invoice you for copyright abuse damages of US$1500 per article unless you can show that you have not infringed any copyright, which will be payable immediately on receipt of the invoice."

9.      Despite the terms of this license, the Website was used to support the operations of Sansoucy LLC, an engineering and utility appraisal company, through distribution of the password to one or more employees of Sansoucy LLC.   Indeed, Sansoucy internet website logs indicate accesses far in excess of a typical single user, including numerous occasions when it appears that multiple users input the single-user subscription username and passwords *at the same time*.

4

10.     II offers subscriptions to the website in electronic format, allowing subscribers to browse and search the Website and its content easily and efficiently. The format is updated frequently and new materials are added on a daily basis.  Emails are sent daily informing the user of the content and the user can save articles or other data in II maintained and controlled files for easy access at a later date.  Print copies are also sent to all subscribers.

11.     Every subscriber has a confidential password and identification number unique to his or her account.

12.     The Website constitutes original material authored by II.  II has complied with the copyright laws and is the exclusive owner of the copyrights therein, including all rights infringed by Sansoucy LLC and Sansoucy.

13.     The Register of Copyrights has issued Certificates of Registration for the Website and related updates.

14.     On or about December 5, 2011, Sansoucy agreed to subscribe to the Website as a single user for $4,115.  On or about December 5, 2011, he agreed affirmatively to the Terms and Conditions for accessing the Website by clicking on the button indicating as such.  At all pertinent times, Sansoucy was acting within the scope of his employment with Sansoucy LLC.

15.     Despite the agreement by Sansoucy LLC and Sansoucy to abide by the terms and conditions, II's Website logs confirmed that multiple users accessed the Website and exceeded the number of users permitted for the fee paid.  Others accessed the Website by receiving the confidential password without authorization from II.

16.     According to the logs kept by II, multiple users logged on to the II website numerous times a day over a short span of time.   All times recorded below are in military time in the same manner as logged by II.  On December 5, 2011, the Sansoucy LLC account logged on to II five times, at 13:28 (1:28 pm), 14:26, 16:11, 17:38, and 20:19; two days later, on December 7, 2011, Sansoucy LLC employees accessed the website at 13:49, 15:24, 16:07, 17:20, 18:10, 19:31, 19:32, and 20:59 - eight times.  The following are just a small sample of additional dates and times when the same repeated logons not discussed otherwise in this complaint occurred: nineteen times on January 25, 2012 at 12:47, 12:52, 13:10, 13:28, twice at 13:30, 15:09, 15:45, 15:46, 16:27, 16:30, 16:38, 16:54, 18:21, 19:10, 21:20, 21:51, and two separate times at 21:53; February 2, 2012 at 12:42, 12:56, 13:13, 13:52, 14:15, 14:18, 15:09, 15:29, 15:52, 15:55, 16:17, 17:03, 17:32, 18:36, 19:46, 19:59, 21:09, and 21:41 – eighteen times; twenty two times on February 15, 2012 three times at 12:24, 14:09, 14:24, 16:02, four times at 16:39, 18:08, twice at 18:11, twice at 18:12, 18:15, twice at 19:04, 19:27, twice at 19:28, and 21:06; fifteen times on March 21, 2012 at 12:08, 12:44, 13:45, 14:01, 14:34, 14:56, 15:05, 15:19, 15:40, 17:01, 17:02 17:39, 17:47, 17:48 and 8:44; on May 30, 2012 at 14:08, 14:21, 16:27, 17:27, 17:29; 17:32, 17:33, 17:43, 17:50, 18:30, 18:35, 18:36, and 18:40, thirteen separate times; and sixteen times on August 21, 2012 at 13:00, 13;01, 13:20, 13:24, 16:16, 16:19, 17:09, 17:18, 17:52, 18:03, 19:20, 19:23, 19:24, 19:25, 19:26 and 21:20.   Moreover, on October 22, 2012, Sansoucy LLC employees logged on to the II website twenty one distinct times – at 13:32, 14:20, 15:32, 15:37, twice at 16:01, 16:07, 16:22, 16:31, 16:39, 16:52, 16:58, 18:05, 18:13, 18:28, 18:59, 19:14, 19:40, 19:49, 20:05, and 20:57.   This type of unusual repeat

access and other such patterns generally indicate that multiple users are accessing the Website.

17.    The brazen abuses by Sansoucy LLC continued unabated and took other forms as well.  The Home page for the Website was visited an unprecedented 2,119 times just under a year.[1]    It is extremely unlikely that a single user would access a website's home page that often – approximately eight times a day for every business day of the year - much less one where articles can be easily saved for later review.

18.    Often articles were accessed several times on different days even though the option to save the article for later access is always present. On February 25, 2012 in just two minutes, Sansoucy LLC employees viewed the article "Matchmaker Platform Launched For Investments" five times, twice at 12:43, twice at 12:44, and at 12:45. The same article was printed at 12:45 that day.  The article "AES Thames Fetches Cash Salvage Bid" was viewed on December 7, 2011 at 19:31, 19:33 and again at 19:34,three times in three minutes; similarly "AES Unit Hits Bankruptcy; Creditors Circle Plants" was viewed on January 4, 2012 at 15:40, 15:42 and 16:50.  On November 26, 2012, Sansoucy LLC employees viewed the article "Algonquin Markets Hydro Portfolio"

---

[1] For example, the home page was visited on November 6, 2012 at 12:52, 13;12, 13:13, 14:43, 14:59, 15:01, 15:25, 16:23, 16:36, 16:49, 16:56, 16:57, 17:07, 17:13, 17:24, 17:32, 17:40, 17:42, 17:49, 17:55, 18:06, 18:27, 18:45, 19:11, 19:39, 20:34 and 20:58; October 2, 2012 at 13:13, 14:03, 15:22, 15:27, 15:29, 15:34, 15:44, 16:02, 16:08, 16:32, 18:16, 18:43, 18:47, 18:57, 19:06, 19:10, 19:13, 19:48, 19:58, 20:34, 20:39, 21:15 and 21:19; September 21, 2012 at 21;01; August 23, 2012 at 13:48, 13:52, 14:49, 15:03, 16:14, 17:00, 17:34, 17:37, 18:08, 18:26, 18:33, 19:17, 19:23, 19:30 and 19:45; July 11, 2012 at 13:14, 14:58, 15:28, 15:40, 15:45, two times at 15:52, 17:10, 17:20, 17:23, 17:27, 17:40, 17:46, 17:51, 18:04, 18:17, 18:25, 18:40 and 18:59; May 15, 2012 at 13:12, 13:59, 14:14, 14:40, 14:43, twice at 14:51, 14:52, 14:53, 15:00, 15:09, 15:22, 15:26, 15:48, 16:19, 17:51, 18:18, two times at 18:54 and 18:59; April 16, 2012 at 12:53, 13:40, 14:17, 14:50, 14:55, 15:10, 15:11, 15:33, 17:34, twice at 17:56, 17:57, 18:19, 18:44, 19:06, 19:19, 19:36, 19:46 and 19:49; February 2, 2012 at 12:42, 12:56, 13:13, 13:52, 14:15, 14:18, 14:24, 14:35, 15:09, 15:29, 15:52, 15:55, 16:17, 17:03, 17:32, 18:36, 19:46, twice at 19:59, 21:09 and 21:41; and December 5, 2011 at 13:28, 14:26, 14:36, 15:04, 15:07, 15:16, twice at 15:18, 15:47, 16:12, 16:18, 16:52, 17:39, 17:45, 18:17, 18:21, and 18:45.

three times, at 12:59, 13:02 and 17:16, and was printed at 13:02 and against at 17:16. On March 27, 2012, "Final Bids Imminent for Perennial's Ga. Cogen" was viewed three times – at 12:48, 12:51, and 12:52 – and printed at 12:50; in just six minutes on November 5, 2012, at 19:16 and again at 19:25, "First Wind Project To Enter JV, Sale Leaseback" was viewed.  On August 20, 2012, "Hunting Unicorns: Individuals As Tax Equity Investors" was viewed at 13:01 twice and at 13:20 and also printed three times, 15 13:01, 13:23, and 13:24. "Panda Sherman Pricing Details Emerge," was viewed August 21, 2012, 18:43, 18:44, twice at 18:46, and 18:49, and August 22, 2012 at 12:32, and also printed August 21, 2012 at 18:44, twice at 18:46, and twice at 18:49 and also August 22, 2012 at 12:32, 12:35, and 12:38.  An article entitled "The Buzz" was viewed five times over the course of several days – August 20, 2012, twice at 19:26; September 12, 2012 at 18:39, September 14, 2012 at 14:58 and September 17, 2912 at 13:35.  "Tokyo Engineering Co. Ropes Exelon Biomass Stakes" was viewed twice on August 23, 2012 at 19:46 and twice on August 27, 2012 at 19:43 and 19:46, and was also printed twice on that day, at 19:44 and 19:47.

19.    The following are additional dates, times, and articles viewed and/or printed by Sansoucy LLC not otherwise discussed in this complaint: October 8, 2012 twice at 13:29, 13:32, 13:34, and twice at 13:50, "Borealis Lands Midland Cogen"; May 30, 2012, 17:27 and 18:37, "Brookfield JV Hooks Transmission Debt"; October 23, 2012, 18:98 and 19:20, "Calif. City Looks to Sell Gas/Solar Hybrid"; July 2, 2012, 15:16 and twice at 15:57, "Cape Wine To Aid Commercial Fishing Under Settlement"; April 13, 2012, twice at 19:46, 19:47, and 19:49, "Cape Wind To Re-Ignite Financing Drive"; April 16, 2012, 13:51 and twice at 19:45, "Cape Wine: A Project Fit For Hollywood And

Lenders"; January 10, 2012, 15:47, 15:48, 19:14 and 19:17, "Choppy Waters: US PowerGen Floats Sale Of NYC Barges"; March 27, 2012, 18:13 and 18:14, "Citi, Goldman Release Exelon Coal Teasers"; November 27, 2012, 18:14, 18:54 and 18:54, "Developer Plots Md. Solar"; September 19, 2012, 13:37 and 13:35, printed at 13:39 and 13:38, "Duke Ices Midwest Gen Process"; July 25, 2012, 16:55, 16:55 and 17:06, "Duke Taps Two To Sell Commercial Fleet"; March 19, 2012, 12:06 and 12:07, "Duquesne Looks For PJM Coal Stake Exit"; November 6, 2012, 18:06 and 18:07, "ECP Ropes S.C. Simple Cycle"; November 12, 2012, 18:18 and twice at 18:19, "ECP Scouts IPO For EquiPower"; July 17, 2012, 13:42, 13:23, 18:03, and 18:01, printed at 13:43 and 18:11, "EQT Markets Midland Cogen"; May 31, 2012, 16:30 and twice at 16:28, "Exelon Coal Process Moves To Round #2"; July 17, 2012 twice at 18:09 and July 18, 2012 at 19:00, "FirstEnergy To Buy Edison Mission Nuclear Stake"; July 11, 2012, 19:32 and twice at 17:24, "Iberdrola Puts Circa 2.5GW Up For Sale"; November 8, 2012, 19:10 and 19:11, "JPM Targets Residential Solar"; September 12, 2012, 18:20 and 18:36, "LS Wraps $300M Gas-Fired N.J. Deal"; August 30, 2012, 21:09 and twice at 18:31, "Midland Final Round Set For September"; October 10, 2012, 18:40 and twice at 18:39, "MLPs Heat Up For Midstream Gas, LNG Sponsors"; September 4, 2012, 18:47 and twice at 19:57, "Outlook For Institutional Investors In Renewables"; October 22, 2012, 15:34 and 16:53, printed that day at 15:37 and 16:53, "Power Intelligence Annual Deal Of The Year Nominations"; January 16, 2012, 19:17 and 19:18, "Project Finance Recap Q4: Deal Flow Slows, But Still Beats Expectations"; August 13, 2012, 17:32 and twice at 17:34, and August 22, 2012, 12:10 and 12:28, printed August 13,

2012 at 17:34 and August 22, 2012 at 12:11 and 12:28, "Riverstone Targets Exelon
Financing"; and August 31, 2012, 15:52 and 15:53, "Tenaska Wraps Refi."

20.     There are also several examples of the same article being viewed multiple
times at exactly the same time: "Arkansas Co-Op Snags GDF Plant" was viewed three
separate times at 12:24 on February 15, 2012; on October 11, 2012 "Astoria Pricing
Details Emerge" was viewed twice at 15:20; "Bicent Debt Holders Scout Restructuring
Advisor" was viewed twice at 14:40 on January 24, 2012; on July 5, 2012, not only was
"Bidders for Brooklyn Navy Head to Next Round" viewed twice at 18:35, but it was also
viewed at 18:34 and 20:03 that day.   The article entitled "Boutique Advisor Starts
Development Lending was viewed twice on October 11, 2012 at 17:42; "Bond Deal On
The Horizon For Non-Renewables" was viewed two times on September 13, 2012 at
20:57 and again that day one minute later; on May 29, 2012 at 18:15, "EIF To Auction
Maine Pipeline, CoGen Project" was viewed twice; February 15, 2012, "Expired DOE
Program Continues To Buttress Solar" was viewed twice at 19:28.

21.     Other articles that were viewed multiple times at the same time, by date,
time and article name, are: September 17, 2012, twice at 17:49, "Rockland Hires
Barclays For Gregory Sale"; February 13, 2012, three times at 12:57, "Rockland Circles
Sunoco Cogen"; August 28, 2012, two times at 20:28, "Riverstone To Net Morris
Assets"; August 9, 2012, twice at 14:11, "Rockland Targets Texas Plant Sale"; February
13, 2012, two times at 18:09, "Rockland Trades N.J. Solar To Miami Shop"; October 12,
2012, twice at 18:36, "Second Wind: Firms Survey Options For Post-Tax Equity Farms";
January 24, 2012, two times at 14:38, "Starwood Takes Biomass Stake From Tyr;
September 28, 2012, twice at 19:10 and October 1, 2012, twice at 13:24, "The Latin

America Rush: Are Developers Making Money South Of The Border? Part II"; October 8, 2012, three times at 16:22, "Union Bank Team Moves To OneWest"; April 16, 2012, two times at 18:19, "Wind M&A Players Adjust Strategies Under PTC Ambiguity"; August 22, 2012, three times at 13:23, "WestLB Senior Staffers To Exit; Plan New Shop"; December 20, 2011, three times at 17:46, "Power Marketing JV Snags N.Y. Peaker"; August 17, 2012, twice at 15:25, "Olympus, John Hancock To Trade Mich. Gas Stake"; April 12, 2012, two times at 15:01, "Noble Nets N.J. CoGen Stake From Rockland"; April 12, 2012, two times at 16:08, "N.Y. BDC Markets Retail Unit"; May 15, 2012, twice at 17:52, "MACH Gen Puts Ariz. CCGT For Sale"; May 7, 2012, twice at 13:23, "Marine Phantom Strikes Again: Calif. Nuclear Falls To Jellyfish-Like Foe"; January 25, 2012, twice at 21:53, "Lower Return Targets Strengthen Infra Appetite"; January 13, 2012, two times at 15:19, "Kelson Hooks Muni Trio For Dogwood Stakes"; May 14, 2013, twice at 18:23, "K Road Snags Solar Project, Lines Up Financing"; May 23, 2012 two times at 14:50, "JV Markets Brooklyn Navy Yard Stake; December 5, 2011, two times at 20:20, "ITC Scoops Entergy Transmission Assets"; January 5, 2012, twice at 17:18, "Iowa Wind Co. Trades Project To MidAmerican"; July 9, 2012, twice at 13:25, "Investors Pick-Up Salem Coal For Re-Development"; March 21, 2012, two times at 17:02, "Iberdrola Trades Conn. Cogen To N.J. Shop"; December 12, 2011, twice at 12:52, "Heading South: AES Plant To Relocate"; February 14, 2012, three times at 18:09, "GMO Touts Energy Prospects"; November 5, 2012, two times at 16:57, "Georgia To See $3b Energy Investment"; march 13, 2012, twice at 18:21, "Exelon Seals Constellation Merger, Moves Toward Coal Auction"; May 7, 2012, at 13:15 twice, "Edison Closing Coal-Fired Plants Ahead Of Schedule"; July 2, 2012, two times at

18:11, "CPV Hunts $500M Club For Gas-Fired Plant"; January 5, 2012, twice at 17:17, "Constellation Talks Calif. Biomass Sale"; August 15, 2012, three times at 17:09, "Consortium Markets N.M. Peaker"; November 19, 2012, twice at 20:12, "Chile: Challenges In An Evolving Market"; August 20, 2012, twice at 17:53, "Midwest Gen Bondholders Scout For Advisor; and July 2, 2012, two times at 18:11, "Brookfield To Bag Alcoa Hydro."

21.    There were certain days that the conduct by Sansoucy LLC employees was far more egregious than others. The height of such conduct occurred over the span of three days, from September 11, 2012 through September 13, 2012.  In those three days alone, Sansoucy LLC employees performed approximately 290 individual functions on the II website.  On September 11, 2012, Sansoucy LLC logged on to II sixteen (16) individual times, visited the Home channel thirteen (13) times, and also visited three other channels.   In addition to simple logons and channel visits, six different articles were viewed that day and nine different searches were performed. Similarly on September 12, 2012 someone using the Sansoucy LLC account from two different IP addresses logged on to II's website an excessive thirty two (32) separate times in the span of just eight hours, an average of once every fifteen minutes.  During that same time period, employees of Sansoucy LLC visited the home channel and other channels twenty nine (29) times, used the search function four times, and viewed nine articles.  On September 13, 2012, there were twenty-five (25) distinct logons to the II website, various website channels were visited twenty-four (24) different times, while there were five article views.  During just those 3 days, Sansoucy LLC logged on to II

seventy three (73) different times and visited the website's channels on sixty nine (69) different occasions.

22.     More unreasonable than the activity above, from September 11, 2012 through September 13, 2012, a tremendous number of PDF documents were downloaded from the II website within a very short time frame.  During the three days, PDF documents were downloaded from II one hundred nine (109) times, most of them duplicative of each other.  On September 11, 2012, PDFs were downloaded at 14:24 (2:24 pm), 14:27, three times at 14:38, 14:42, 14:46, 15:58, 16:09, 16:20, three times at 16:33, twice at 16:42, 16:51, 16:52, 17:00, twice at 17:01, 19:05, 21:15, 21:29, 21:38, 21:58 and 22:03.  On September 12, 2012, PDF downloads occurred at 14:20, 14:40, 15:01, 15:05, 15:09, 15:10, twice at 15:13, 15:14, 15:30, 15:47, 16:01, 16:13, 16:14, 16:19, 16:20, 16:22, 16:23, 16:24, 16:25, 16:26, 16:27, 18:51, 19:10, 19:52, twice at 19:54, 19:58, 19:59, 20:08, 20:12, 20:16, 20:20, 20:23, 20:27, 20:40, 20:48, 20:49, 20:57, 21:02, twice at 21:08, twice at 21:18, 21:23, 21:30, 21:35, 21:44, 21:55, and 21:58. Finally, on September 13, 2013, thirty two (32) PDFs were downloaded at 14:02, 14:21, 15:23, 15:24, 15:40, three times at 15:54, 16:14, 16:17, 16:40, 16:46, twice at 16:50, twice at 16:58, 17:04, 17:11, 17:25, 17:32, 17:39, 17:46, twice at 18:57, 19:03, 19:22, 19:33, 19:44, 19:55, 20:06, 20:08 and 20:12. The sheer number of downloads that occurred within that three day period necessarily lends itself to the fact that multiple users are accessing the II website using a single account.

23.     The sheer number of downloads that occurred within that three day period necessarily lends itself to the fact that multiple users are accessing the II website using a single account.

24.    These abuses were reported to Sansoucy LLC repeatedly and did not cease.   On March 15, 2013, John Diaz ("Diaz") of II contacted Linda Thomas at Sansoucy LLC with an offer to resolve the copyright infringement by Sansoucy and other employees of Sansoucy LLC by simply increasing the number of users on the Sansoucy license.  Diaz received a response from Sansoucy rejecting the offer.  Again on April 17, 2013, Diaz contacted Sansoucy LLC employee Pam Sansoucy with another offer to resolve the copyright infringement and never received a response regarding that offer.  A cease and desist letter was forwarded to Sansoucy on or about May 1, 2013 and no response was received,

## AS AND FOR A FIRST CAUSE OF ACTION FOR DIRECT COPYRIGHT INFRINGEMENT

25.    II repeats and realleges the allegations contained in paragraphs 1 through 24 of this Complaint with the same force and effect as if set forth fully herein.

26.    Notwithstanding the provision of the Copyright Act that the display, distribution and reproduction of copyrighted works may lawfully be made only by the copyright owner or with its authorization, Defendants have willfully and without II's permission infringed II's copyright by engaging in the systematic, regular and repeated unauthorized access to the Website.

27.    II has been irreparably harmed by Defendants' unauthorized reproduction of its copyrighted works.

28.    In light of the foregoing, II is entitled to the remedies provided for in 17 U.S.C. §§ 502 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION FOR VIOLATION OF THE
## COMPUTER FRAUD AND ABUSE ACT

29.     II repeats and realleges the allegations contained in paragraphs 1 through 28 of this Complaint with the same force and effect as if set forth fully herein.

30.     Defendants have violated 18 U.S.C. § 1030(a)(2) by intentionally accessing, without authorization, a computer involved in interstate commerce or communication.

31.     Defendants have violated 18 U.S.C. § 1030(a)(5) by knowingly causing the transmission of a code, specifically Defendants' confidential username and password.

32.     Defendants have violated 18 U.S.C. § 1030(a)(6) by knowingly and with an intent to defraud trafficking, in a manner that affects interstate commerce, in passwords and access codes through which II's website may be accessed without authorization.

33.     II has suffered damage and loss by reason of these violations and is entitled to damages, injunctive relief and other equitable relief as provided by 18 U.S.C. § 1030(g).

## AS AND FOR A THIRD CAUSE OF ACTION FOR VIOLATION
## OF THE ELECTRONIC PRIVACY ACT

34.     II repeats and realleges the allegations contained in paragraphs 1 through 33 of this Complaint with the same force and effect as if set forth fully herein.

35.     Defendants has violated Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 *et seq.*, by (a) intentionally accessing without authorization, or

15

by intentionally exceeding an authorization to access, the password-protected areas of II's Website; (b) obtaining access to electronic communications while such communications were in electronic storage in that web site; (c) disclosing such communications to third parties not authorized to receive them; and (d) conspiring, encouraging, aiding, abetting, and participating in efforts to do so.

36.    II has been irreparably damaged by Defendants' violations of Title II of the Electronic Communications Privacy Act, and is entitled to damages, injunctive relief, and attorneys' fees and costs pursuant to 18 U.S.C. § 2707.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR VIOLATION OF SECTION 1201 OF THE DIGITAL MILLENNIUM COPYRIGHT ACT

37.    II repeats and realleges the allegations contained in paragraphs 1 through 36 of this Complaint with the same force and effect as if set forth fully herein.

38.    Sansoucy LLC employees have distributed, received and used the password provided by II to Sansoucy LLC to access the Website without authorization.

39.    The password was used to circumvent the technological protection preventing unauthorized access to a copyrighted work, the Website.

40.    II has been irreparably damaged and is entitled to injunctive relief, damages and attorneys' fees under Section 1203 of the Digital Millennium Copyright Act.

## AS AND FOR A FIFTH CAUSE OF ACTION FOR BREACH OF CONTRACT

41.    II repeats and realleges the allegations contained in paragraphs 1 through 40 of this Complaint with the same force and effect as if set forth fully herein.

42.    II and Defendants entered into a valid and enforceable agreement, under which II provided single-user Internet access to the Website and a limited license for

16

access by a single Sansoucy LLC user.  II further provided a confidential password to

Defendants and Defendants agreed that access would be limited to one user and not to

permit any other person or entity to use the password to access the site or to use the

password to access the site for anyone else.

43.     Defendants breached its agreement with II by providing the password to

multiple persons and permitting those persons to use the password to access the

Publication for purposes substantially in excess of its license.

44.     Section 3.5 of the Terms and Conditions for accessing the Website clearly

states that unauthorized distribution, display, reproduction or other access results in

damages of $1,500 for each infringing article.  Defendants may have infringed scores, if

not hundreds, of articles, resulting in damages in excess of $400,000.

## AS AND FOR A SIXTH CAUSE OF ACTION FOR MISAPPORPRIATION OF TRADE SECRETS

45.     II repeats and realleges the allegations contained in paragraphs 1 through 44 of

this Complaint with the same force and effect as if set forth fully herein.

46.     II licensed a confidential password to Defendants for use only by a single user,

and that password was an item of independent economic value.

47.     The confidential password's value is derived from not being generally known to,

and not being readily ascertainable by, other persons who can obtain economic value

from disclosure or use of the password.

48.     Without authorization from II, Defendants misappropriated the password and

used the password for the benefit of others.

49.     Defendants' misappropriation of II's confidential password was willful and

malicious and caused irreparable damage to II.

WHEREFORE, II demands judgment in its favor and against Defendants, as follows:

(1) that Defendants and its employees and agents be permanently enjoined from, directly or indirectly, infringing in any manner any of II's copyrighted material and from disclosing confidential passwords to unauthorized persons and entities, and from inducing, aiding, causing or materially contributing to such infringement, including the provision of confidential passwords to unauthorized users, and from violating the Copyright Act, 17 U.S.C. § 501 et seq.; the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030; Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 et seq;

(2) that Defendants be required to pay II statutory damages for every instance in which II's copyright was infringed;

(3) that Defendants be required to pay II its actual damages incurred as the result of Defendants' infringement of II's copyrights;

(4) that Defendants be required to pay damages (such damages to include lost profits or Defendants' profits where appropriate), including without limitation treble damages, punitive damages, and exemplary damages, for violations of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030; violations of Title II of the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701 et seq.; violations of the Copyright Act, 18 U.S.C. §§ 501 et seq.; violations of the Digital Millennium Copyright Act of 1998, 18 U.S.C. §§ 1201 et seq. and misappropriation of trade secrets;

(5) that Defendants be required to pay II its direct and consequential damages incurred as the result of Defendants' breach of its agreement with II;

(6) that Defendants be required to pay liquidated damages in the amount of $1,500 per infringement under the license agreement, in an amount believed to be in excess of $400,000 but which cannot be definitively ascertained at this time and shall be determined at trial;

(7) that Defendants be required to pay II its attorneys' fees and other costs of this action; and

(8) for such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        June 10, 2013

THOMAS M. LANCIA PLLC
Attorney for Plaintiff **INSTITUTIONAL
INVESTOR, LLC**

Thomas M. Lancia, Esq. (TL 1480)
22 Cortlandt Street
16th Floor
New York, New York 10007
212.964.3157
tlancia@lancialaw.com


To:   George E. Sansoucy, P.E. LLC
279 North Main Street
Lancaster, New Hampshire 03584

Attention: George E. Sansoucy

19